OPINION OF THE COURT
W. Bromley Hall, J.
The Town of Islip is the owner of the premises at 485 Elmore Street, Central Islip. The house has been rented to the respondent pursuant to an oral month-to-month lease since July 1,1983. The agreed upon rent is $300 per month.
At the time the property was rented to the respondent it was the intention of the town to have Mrs. Mulligan qualify for section 8 housing (42 USC § 1437f). Once she had qualified, the town would contract to sell to a developer, who would rehabilitate the building and continue to rent it to Mrs. Mulligan. For that purpose the town conducted an inspection of the property, noting all the things which needed repair or replacement.
The essence of the transaction is that it should be consummated as soon as possible, so that the occupant is qualified, the repairs made and the home restored. The purpose of section 8 is to provide adequate housing to those who cannot afford it.
Unfortunately, in this case, things did not go as planned. Mrs. Mulligan was not qualified, the house was not sold, the repairs were not made, and both sides have come to an impasse.
It is the town’s position that Mrs. Mulligan did not cooperate with the town personnel. She did not provide the needed information and did not keep appointments so that her application could be processed. Mrs. Mulligan, on the other hand, complains that her home has been in dire need of very *280 substantial repairs and her requests for repairs were for the most part ignored.
While there is a dispute as to whether the inspection report of a town building inspector should be admitted into evidence, the clear testimony of the petitioner’s own inspector is that this property was in substandard condition at his very first inspection in 1983. Moreover, it is clear from his testimony that, while some of the defects in the property were cleared up, many were left unrepaired and even those which were repaired were, themselves, done in a substandard manner.
The photographs offered by the respondent depict conditions which cannot be considered to be acceptable by any reasonable standard. It is true that these conditions did preexist petitioner’s title. However, when petitioner assumed to charge the respondent for the use of the premises as a residence, it made the implied warranty that it would make the premises habitable. Certainly, petitioner was not required to make instant repairs, but the two-year delay we have here is certainly unreasonable.
Nor do we find that the existence of any one condition alone would breach the warranty of habitability. So, for instance, the incident of the cesspool backing up into the basement, which was promptly and properly corrected with the installation of a new cesspool, did not make the premises uninhabitable.
However, the existence of roaches and rats with only token attempts to exterminate them must be considered a breach of the warranty. There is uncontradicted testimony that a portion of the bathroom wall, in the shower, has been unrepaired for this entire period. It is common knowledge that the continuously wet dank conditions depicted here are a breeding ground for roaches and vermin.
Petitioner’s claims that the respondent failed to cooperate in the preparation of the section 8 application is also unavailing. While we do not question the accuracy of Ms. Bragin’s testimony, it is clear that in well over one year her efforts to get the cooperation of the respondent consisted of writing one letter and making a few phone calls. It may well be that she found the respondent less cooperative than she should have been, nevertheless it is the duty of these officials to implement the program. Mrs. Mulligan was living under substandard conditions. While she was complaining about the conditions, the petitioner was ignoring the complaints and, in what *281 appears to be a desultory manner, reminding her she should be helping to prepare for the section 8 approval.
The parties were just not in communication, but it was the petitioner’s job to do that. We find that the petitioner failed in that regard.
The remaining question is what damages the parties have sustained. The rent for the premises is $300 per month. Respondent paid a portion of the rent for December 1984, but nothing since. On that basis there is now due to the petitioner the sum of $2,575.
While respondent argues that we should allow an abatement of rent from the inception of this lease, there was a previous proceeding in this matter which resulted in a judgment for the petitioner in July 1984. Whatever defenses respondent has prior to that time are merged in that judgment and cannot be raised now.
We find that the reasonable rental value of the premises in the condition established in court is $150 per month, commencing in June 1984. The petitioner was therefore due the sum of $2,250 through August 1985. Respondent has paid the sum of $1,225 in that period. There is therefore due to the petitioner the sum of $1,025.
Judgment for the petitioner in the sum of $1,025. The respondent shall have a 10-day stay.